Fernando E. NUNES et al.

v.

## MEADOWBROOK DEVELOPMENT CO., INC.

Nos. 2009–128–Appeal, 2010–402–Appeal.

Supreme Court of Rhode Island.

July 6, 2011.

Howard E. Walker, Esq., Hope Valley, for Plaintiff.

John O. Mancini, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

### OPINION

Justice ROBINSON for the Court.

The plaintiffs, Fernando E. Nunes and Nancy A. Nunes, appeal from a judgment of the Superior Court.[1] The plaintiffs' appellate contentions concern an interlocutory order which had entered nearly two years prior to the entry of judgment. With respect to that order, the plaintiffs

---

1. The plaintiffs also appeal from an order of the Superior Court dismissing their appeal for failure to transmit the record. We decline to address that procedural issue; we vacate the order of the Superior Court and proceed directly to the merits of plaintiffs' appeal.

contend that a hearing justice of the Superior Court committed reversible error in ruling that they "were not entitled to recover * * * attorneys fees and expenses" pursuant to "the statute relating to warranty covenants * * *."[2]

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are satisfied that cause has not been shown and that this appeal may be decided without further briefing or argument.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The underlying dispute was the subject of an appeal to this Court in 2003. In our opinion in *Nunes v. Meadowbrook Development Co.*, 824 A.2d 421 (R.I.2003), we summarized the basic factual circumstances that gave rise to the instant litigation. The plaintiffs purchased property from defendant, Meadowbrook Development Co., Inc. *Id.* at 422. At the time that the purchase and sale agreement was executed, but prior to the issuance of a deed, the plaintiffs agreed to redraw the lot lines to accommodate a planned easement over plaintiffs' lot, so that the defendant corpo-

ration could access other lots that it owned nearby. *Id.* at 422–23. Thereafter, defendant withdrew a petition that it had filed and that was still pending before the Cumberland Planning Board, and it issued a deed to plaintiffs in May of 1999; that deed did not make reference to the above-referenced easement. *Id.* at 423. A few years after the deed was recorded, defendant began to use the easement. At that point, plaintiffs sued for injunctive relief, alleging that defendant had violated the warranty covenants in the deed. *Id.* The trial court ruled that the disputed easement was valid. *Id.* We reversed, however, holding that defendant had not established a valid easement—and we remanded the case to the Superior Court. *Id.* at 426.

Upon remand, on August 10, 2005, plaintiffs filed a motion for an award of attorneys' fees, damages, and costs. The plaintiffs asserted in that motion that they were seeking an award of "attorneys fees and costs of suit for the defense of title to their home and just compensation for the defendant's use of the 'easement' and removal of the same from their property." With respect to their claim for attorneys' fees, plaintiffs stated that they were entitled to same "under the warranties of title in the warranty deed from defendant to plaintiffs."[3]

On June 2, 2006, defendant filed a motion for summary judgment, contending, *inter alia*, that "pursuant to well established Rhode Island law, attorneys' fees may not be awarded for the successful defense of title under a Rhode Island Gen-

---

**2.** General Laws 1956 § 34–11–15 sets forth the five warranty deed covenants. The plaintiffs' claim for attorneys' fees was, as an initial matter, predicated upon more than one of the covenants. However, since their argument before this Court focuses almost exclusively on the fifth covenant, we shall focus our analysis on same. The fifth covenant is worded as follows in the above-cited statute:

"(5) That the grantor will, and his or her heirs, executors, and administrators shall, warrant and defend the granted premises to the grantee and his or her heirs and assigns forever against the *lawful claims and demands* of all persons." (Emphasis added.)

**3.** *See* footnote 2, *supra.*

eral Warranty Deed." On August 16, 2006, plaintiffs filed an objection to defendant's motion for summary judgment, and they simultaneously cross-moved for summary judgment in their favor.

On October 24, 2006, a hearing was held in the Superior Court on the motions for summary judgment. The hearing justice concluded that plaintiffs were not entitled to an award of attorneys' fees; she based that conclusion on the fact that, according to the statutory language, defendant was "only liable to defend against lawful claims," and she then ruled that "the claim that was asserted against the property and the plaintiffs wasn't lawful." [4] On November 17, 2006, an order entered granting defendant's motion for summary judgment as to plaintiffs' motion for an award of attorneys' fees, indicating explicitly that plaintiffs were "not entitled to the award of attorneys' fees * * *."

Thereafter, in a decision filed on September 3, 2008, the trial justice [5] determined (1) that "[d]efendant [was] guilty of trespass upon [p]laintiffs' property" and (2) that "[d]efendant must remit to [p]laintiffs as damages an amount totaling $2,525,[ ] plus interest." On November 3, 2008, judgment entered in favor of plaintiffs for $2,525, plus interest. On November 14, 2008, plaintiffs filed a notice of appeal.

## II

### Standard of Review

We review a hearing justice's grant of summary judgment in a *de novo* manner. *Papudesu v. Medical Malprac-*

tice Joint Underwriting Association of Rhode Island, 18 A.3d 495, 497 (R.I.2011); see also Beacon Mutual Insurance Co. v. Spino Brothers, Inc., 11 A.3d 645, 648 (R.I.2011). In so doing, this Court applies the same standards and rules as did the hearing justice. Planned Environments Management Corp. v. Robert, 966 A.2d 117, 121 (R.I.2009); see also McNulty v. City of Providence, 994 A.2d 1221, 1224 (R.I.2010). This Court will affirm a hearing justice's grant of summary judgment "if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Lynch v. Spirit Rent–A–Car, Inc., 965 A.2d 417, 424 (R.I.2009); Alves v. Hometown Newspapers, Inc., 857 A.2d 743, 750 (R.I.2004).

We review questions of statutory interpretation in a *de novo* manner. *State v. Graff,* 17 A.3d 1005, 1010 (R.I.2011); *see also In re Brown,* 903 A.2d 147, 149 (R.I. 2006). Furthermore, "where the legal basis for awarding [attorneys'] fees is at issue, we review that question of law *de novo.*" *Pearson v. Pearson,* 11 A.3d 103, 108 (R.I.2011).

## III

### Analysis

We begin our consideration of the hearing justice's ruling with respect to attorneys' fees by noting this Court's steadfast adherence to what is called "the American Rule:" generally, each litigant is expected to pay *its own* attorneys' fees, unless a statute or a contractual provision mandates a different allocation. *Moore v. Ballard,* 914 A.2d 487, 489 (R.I.2007); *see*

---

4. The hearing justice further ruled that, "to the extent that [defendant's] motion for summary judgment [asked her] to determine that the [plaintiffs are] not entitled to any damages, that piece of the motion should be denied."

5. We note that the justice who presided over the trial concerning plaintiffs' entitlement to damages was not the same justice as had presided over the hearing with respect to the earlier cross-motions for summary judgment concerning the attorneys' fees issue.

*also Pearson,* 11 A.3d at 108–09; *Napier v. Epoch Corp.,* 971 A.2d 594, 598 n. 4 (R.I. 2009) ("[L]itigants generally are responsible for their own attorneys' fees and costs."); *Mullowney v. Masopust,* 943 A.2d 1029, 1035 n. 6 (R.I.2008).

■ In the instant case, plaintiffs contend that they are entitled to attorneys' fees pursuant to the covenants set forth in the statutory warranty deed, § 34–11–15, and more specifically the fifth covenant—to "warrant and defend the granted premises * * * against the *lawful claims* and demands of all persons." (Emphasis added.)

■ Courts in many jurisdictions interpret "lawful claims" in the covenant to defend title, as meaning *successful claims;* pursuant to that interpretation, a grantor under a warranty deed does not promise to defend the grantee's title against *all* claims—but only those claims in which the claim against title is *successful. See, e.g., McCausey v. Oliver,* 253 Mich.App. 703, 660 N.W.2d 337, 340 (2002) (collecting cases) ("A reasonable construction of the phrase 'lawful claims,' * * * considering the applicable subject matter and context, is that they are demands that are recognized by law as supported by a rightful, and superior, interest, i.e., a demand that resulted in the grantee being evicted from the premises conveyed by warranty deed."); *Black v. Patel,* 357 S.C. 466, 594 S.E.2d 162, 165 (2004) ("We agree that in this context, the language that a claim to title must be 'lawful' in order to trigger the duty to defend indicates that the duty extends only to claims which are ultimately successful."); *see also* 20 Am.Jur.2d *Covenants* § 140 at 661 (2005) ("[A] covenant of warranty does not protect against every unfounded adverse claim * * *. * * * [A] successful defense of title bars the grantee from recovering attorney's fees against the grantor."); 21 C.J.S. *Covenants* § 83 at 394 (2006) ("As a general rule * * *, where a covenantee *successfully* defends title, he or she is not entitled to attorney's fees from the covenantor under a warranty deed.") (emphasis added). Although there is no clear precedent in this jurisdiction, it is our view, having carefully weighed the arguments made by the parties to the instant case, that the warranty to defend should be similarly limited in Rhode Island to *successful* attacks on the title. *See Bitting v. Gray,* 897 A.2d 25, 35 (R.I.2006) (*"To the extent* that the defendants adversely possessed [the property] * * *, [the defendants] may have breached the warranty covenants.") (emphasis added).

The plaintiffs acknowledge that "warranty covenants do not entitle the grantee to recover attorneys fees from the grantor for a *successful* defense of title," (emphasis in original), but they invited us to create an exception to this general rule where it is the *grantor* who attacks the title. We decline to do so.[6]

**6.** It should be noted that, although we adhere to the American Rule, this Court has repeatedly recognized that that rule "is not without exception:" this Court has the "inherent power to fashion an appropriate remedy that would serve the ends of justice," and the trial courts have the authority to "award attorney's fees as a sanction for contumacious conduct." *Moore v. Ballard,* 914 A.2d 487, 489 (R.I.2007) (internal quotation marks omitted). Plaintiffs have asked us, as they asked the trial court, to feel outraged that the challenge to their title came from the *grantor* of that very same title. However, as the travel of the instant case clearly indicates, there existed a legitimate dispute as to the extent of the conveyance from Meadowbrook to Fernando and Nancy Nunes. *See Nunes v. Meadowbrook Development Co.,* 824 A.2d 421 (R.I. 2003). Had there been evidence of "contumacious conduct," we are confident that a remedy to "serve the ends of justice" could have been arrived at without modifying or abridging the general rule with respect to the award of attorneys' fees pursuant to the war-

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record in this case may be returned to that tribunal.

ranty covenants. *See Moore*, 914 A.2d at 489. As to this case, however, it is our opinion that there was no such "contumacious conduct."